**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **HEATHER KETTEN** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:21-cv-02437-RMM** |
| | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| *Defendant.* | ) | |
| _____ | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT**
**DISTRICT OF COLUMBIA'S MOTION TO DISMISS**

Plaintiff hereby opposes the Defendant District of Columbia's Motion to Dismiss.  In support of this Opposition, Plaintiff relies on the following Memorandum of Points and Authorities set out below.

## I.   FACTUAL BACKGROUND

This case arises out of an incident that occurred on November 28, 2018, when Ms. Heather Ketten, a tourist from Austin, Texas, fell on a section of sidewalk that was in disrepair near the National Mall at the southeast corner of the intersection of 7th Street, NW and Madison Drive, NW.  As a result of the fall, Ms. Ketten fractured her left foot and has undergone two surgeries.  While the Defendant District of Columbia has filed a motion to dismiss Ms. Ketten's lawsuit, claiming that the statute of limitations ran before she filed an Amended Complaint against it on April 21, 2022, the Defendant's Motion should be denied because (1) in accordance with the Covid-19 Emergency Tolling Orders issued by the Chief Judge of the Superior Court of the District of Columbia the statute of limitations has not expired; and (2) having affirmatively

–1–

induced the Plaintiff to delay filing suit against it, and likely misrepresenting crucial statements of fact in doing so, the Defendant District of Columbia should be estopped from asserting the defense of the statute of limitations.

A.     Tolling for the Covid-19 Pandemic

While the Plaintiff's injury occurred on November 28, 2018, the usual three-year statute of limitations for the Plaintiff's claim against the District of Columbia is subject to the Covid-19 tolling orders issued by the Chief Judge of the Superior Court of the District of Columbia.  These orders suspended the running of the statute of limitations for state law negligence claims from March 18, 2020 through March 30, 2021, so that cases arising before March 18, 2020, had the statute of limitations tolled for 377 days.  As the Plaintiff's claim arose on November 28, 2018, her deadline for filing a lawsuit was extended by 377 days until December 10, 2022, such that the filing of her Amended Complaint on April 21, 2022 was timely.

Turning to the specific orders that were put in place due to the Covid-19 public health emergency, on March 18, 2020, the Chief Judge of the Superior Court for the District of Columbia ordered "all deadlines and time limits in statutes, court rules, and standing and other orders issued by the court. . . suspended tolled, and extended during the period of the [Covid-19] emergency."  *See* Exhibit 1 (Order Denying Mot. to Dismiss, Aug. 19, 2021, J. Matini at 2 (*citing* Exhibit 2: Super. Ct. Chief Judge Order (Mar. 19, 2020), at 2)).  In light of the Covid-19 tolling orders from the Chief Judge of the Superior Court, which applied to "all deadlines and time limits in statutes," the Plaintiff's statute of limitations against the District of Columbia does not expire until December 10, 2022.  The Chief Judge's tolling order that was in effect from March 18, 2020 through March 30, 2021 has been widely interpreted to toll all state law claims

–2–

which fall under the catch-all three year statute of limitations specified in D.C. Code § 12-301(a)(8). *See* Exhibit 1 (Order Denying Mot. to Dismiss, Aug. 19, 2021, J. Matini at 2); Exhibit 3: *Benitez v. Ingram* ((2018 CA 007957)*,* Omnibus Order, June 2, 2021, J. Park, at 2, n.1 (explaining that the period from March 8, 2020 to March 30, 2021 is excluded from the calculation of any limitations period such that "the statute of limitations, therefore, on a negligence claim arising out of [a] March 8, 2018 accident does not expire until March 2022").

      B.     <u>Equitable Estoppel</u>

      In addition to the tolling of the statute of limitations in this case due to the Covid-19 pandemic, the Defendant should be precluded from asserting a statute of limitations defense in this case because the District of Columbia misled Plaintiff's counsel about its maintenance and ownership responsibilities for the sidewalk in question despite the best efforts and due diligence of Plaintiff's counsel.  Specifically, on January 28, 2019, two months after Plaintiff's injury on November 28, 2019, the undersigned hand-delivered a letter to the Defendant District of Columbia notifying it of Plaintiff's injury and her intention of bringing a civil claim against it. *See* Exhibit 4: Letter to Defendant District of Columbia, January 28, 2019.  This was an exercise of due diligence, in accordance with D.C. Code § 12-309, which requires that any claimant with a potential action against the District of Columbia must provide written notice of the intent to bring a claim within six months of any injury in order to preserve the claimant's ability to file a lawsuit.

      On March 15, 2019, in response to the Plaintiff's 12-309 notice, the Defendant District of Columbia denied responsibility for the incident and reported to Plaintiff's counsel that,

*Our investigation indicates that the section of the roadway involved is under the jurisdiction of the National Park service.  Please forward your claim directly to their attention at the address listed below:*

Department of the Interior
National Park Service
Tort Claims Processing
1100 Ohio Drive, S.W.
Washington, DC 20242
(202) 619-7020

*See* Exhibit 5: Letter from District of Columbia, March 15, 2019 (emphasis added). Plaintiff's counsel relied upon the representation of the District of Columbia that the location of the Plaintiff's injury was in fact "under the jurisdiction of the National Park Service," and thereafter initiated the process for submitting a claim solely to the National Park Service under the Federal Tort Claims Act, which culminated in the instant litigation.

Once suit was filed against the federal government and discovery was underway, on March 30, 2022, the Defendant United States of America furnished documentary evidence to the Plaintiff asserting that the District of Columbia did, in fact, have jurisdiction over the sidewalk at or near 7th Street, NW and Madison Street, NW.  *See* Exhibit 6: Memo from the D.C. Office of the Surveyor, October 2, 1991, at DOI 005-006.  Specifically, the United States produced a memorandum, prepared on District of Columbia letterhead, stating that, "[w]hile title to these streets is assuredly in the United States of America a review of the records indicates that District of Columbia jurisdiction prevails" as to certain portions of 7th Street, NW near the National Mall. The document reads:

–4–

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
DEPARTMENT OF PUBLIC WORKS
OFFICE OF THE SURVEYOR
614 H STREET, N.W., ROOM 605,
WASHINGTON, D.C.   20001



LIMITS OF D.C. JURISDICTION OVER
3rd, 4th, 7th and 14th STREETS
BETWEEN INDEPENDENCE AVENUE AND CONSTITUTION AVENUE

An inquiry has been made by the D.C. Office of the Corporation
Counsel as to the limits of District of Columbia jurisdiction
over the streets listed above.  While title to these streets is
assuredly in the United States of America a review of the
records indicates that District of Columbia jurisdiction
prevails to the limits as follows:

7th Street

(a)   From Independence Avenue, S.W. to the north curbline of
Madison Drive, the District of Columbia has jurisdiction over a
132 foot width of 7th Street, consisting of a 76 foot roadway
and a width of 28 feet on each side of the curblines.  (Note,
however, that a transfer of jurisdiction from the National Park
Service to the District, by Park Service Land Transfer Order No.
578 of March 27, 1939, of space westerly of the west curbline
excluded an undimensioned short length (approximately 120 feet)
of a 4.5 foot wide strip of land then occupied by a building
that no longer exists which housed the U.S. Army Medical Library
and Museum).

(b)  From the north curbline of Madison Drive to Constitution
Avenue, the District of Columbia has jurisdiction over a 104
foot width of 7th Street, consisting of a 76 foot roadway and a
width of 28 feet west of the westerly curbline.

This October 2, 1991 memorandum, which on its face, originated with the District of

Columbia, created a significant question of fact about the accuracy of the District of Columbia's

representation that it lacks "jurisdiction" over the stretch of sidewalk where this incident

occurred.  Accordingly, Plaintiff's counsel contacted Janice Stokes, the District of Columbia's

employee who had reported that its investigation concluded that the sidewalk was "under the jurisdiction of the National Park Service," immediately after receiving the United States' discovery responses, and asked for any proof or records related to any purported investigation. *See* Exhibit 7: Email from Plaintiff's Counsel to Janice Stokes. Ms. Stokes did not respond to undersigned counsel with any further evidence of the investigation nor did she provide any support for the District's position that the area in question was federal government property. Having not received any substantive response from Ms. Stokes, Plaintiff filed the Amended Complaint on April 21, 2022.

Notably, while there appears to be a question of fact about the District of Columbia's jurisdiction over – and thus its responsibility toward - the area in question, we do not intend to suggest that the federal government is not a proper party to the case. Clearly, the District of Columbia memorandum from October 2, 1991, established that the area in question was under the *title* of the federal government, and therefore the United States, as the owner of the allegedly unsafe property, would certainly be an appropriate defendant to this premises liability case. However, the nature of the District's responsibility should be the subject of discovery in this case, given that what appears to be its own memorandum recognized that D.C. jurisdiction "prevailed" at least for some purposes. More to the point, in this motion we need not definitively determine which entity owns and/or maintains the area in question. Rather, the issue is whether the District made a material misrepresentation to the Plaintiff regarding its alleged lack of jurisdiction over the area where Plaintiff fell. Therefore, as we set out more fully below, because there is now record evidence that the District likely made an affirmative misrepresentation about the jurisdiction of the area in question, the Defendant should be precluded from asserting a

–6–

statute of limitations defense due to the Plaintiff's detrimental reliance on the District of
Columbia's misrepresentation.

In the argument section that follows, we first address the Covid-19 Emergency Tolling
Orders before turning to the equitable estoppel discussion in more detail.

## II.    ARGUMENT

A.    <u>Defendant's Motion to Dismiss should be denied because Plaintiff's statute of
limitations does not expire until December 10, 2022, according to the Covid-19
Emergency Tolling Orders issued by the Chief Judge of Superior Court.</u>

Defendant's Motion to Dismiss should be denied because the Plaintiff's Amended
Complaint was timely filed on April 21, 2022.  While D.C. Code § 12-301(a)(8) provides that the
usual state law-statute of limitations for negligence actions is three years, the Chief Judge of the
Superior Court of the District of Columbia issued an order on March 18, 2020 which rendered
"all deadlines and time limits in statutes, court rules, and standing and other orders issued by the
court … suspended, tolled, and extended during the period of the [COID-19] emergency."  *See*
Exhibit 1: *Berg v. Hickson* (2021 CA 001977 V), Order Denying Mot. to Dismiss, J. Matini, at 2
(Aug. 19. 2021) (*citing* Exhibit 2: Chief Judge Order (Mar. 18, 2020), at 2)).  In subsequent
orders thereafter, the Chief Judge of the Superior Court extended the tolling period through
March 30, 2021.  *See id.* (*citing* Chief Judge Order (Jan. 13, 2021) at 1).

While this case is pending in federal court, the caselaw in this jurisdiction is clear that the
state law-statute of limitations applies in this Court, including any modifications to the statute of
limitations on account of a public health emergency.  *See Steorts v. American Airlines*, 647 F.2d
194, 197 (D.C. Cir. 1981) (holding that "a limitation on the time of suit is procedural and
governed by the law of the forum").  The *Steorts* Court further noted that, "the District Court

–7–

must adhere to the same limitation period" that would apply in Superior Court.  *Id.*

Moreover, every District of Columbia Court that has dealt with the question presented in the case at bar has determined that the Chief Judge of the Superior Court of the District of Columbia had the authority to modify the statute of limitations for civil actions in the District of Columbia, so that all statutes of limitations for ordinary negligence cases were tolled from March 18, 2020 through March 30, 2021. *See* Exhibit 1: *Berg v. Hickson* (2021 CA 001977 V), Order Denying Mot. to Dismiss, J. Matini, at 2 (Aug. 19. 2021); Exhibit 3: *Benitez v. Ingram* (2018 CA 007957) Omnibus Order, J. Park, at 2, n.1, June 2, 2021.  For example, in *Berg v. Hickson*, D.C. Superior Court Judge Matini concluded that a plaintiff timely filed her complaint on June 11, 2021, even though the original injury occurred on April 5, 2018, more than three years before the lawsuit.  (Exhibit 1, at 1, 4.)  In holding that the complaint in *Berg* was filed in a timely manner according to the Covid-19 tolling orders, Judge Matini reasoned that,

> The statute of limitations as to Plaintiff's claim in the instant case was paused during the [Covid-19 emergency] tolling period, meaning that the proper deadline for Plaintiff to being her claim can be found by adding 388 [sic] days between March 18, 2020 and March 30, 2021 to the Plaintiff's original deadline of April 5, 2021.  *Id.* at 3 (*citing* Addendum to the General Order Concerning Civil Cases (January 21, 2021) at 2).

Similarly, in *Benitez v. Ingram*, D. C. Superior Court Judge Park determined that, according to the tolling orders issued by Chief Judge of the Superior Court in the face of the Covid-19 pandemic, "the statute of limitations on a negligence claim arising out of [a] March 8, 2018 accident does not expire until [377 days later in] March 2022."  Exhibit 3: *Benitez v. Ingram* (2018 CA 007957), Omnibus Order, June 2, 2021, J. Park, at 2, n.1

Here, as in *Berg* and *Benitez*, the three-year statute of limitations for the Plaintiff's claims against the District of Columbia under D.C. Code § 12-301(a)(8) was tolled for 377 days, the

–8–

time period from March 18, 2020 through March 30, 2021.  Therefore, because the Plaintiff's injury occurred on November 28, 2018, the deadline for the filing of her complaint against the District of Columbia should be extended by 377 days until December 10, 2022.  Given that the Amended Complaint against the District of Columbia was filed on April 21, 2022, well before the December 10, 2022 deadline, the Plaintiff's filing was timely and the Defendant's Motion to Dismiss should be denied.

Defendant's reliance on Judge Bates's decision in *United States v. King* is misplaced for several reasons.  First and foremost, comparing *King* to the instant case is truly like "comparing apples and oranges" given that *King* was a criminal case in which the defendant was attempting to file a petition to modify his sentence under the federal sentencing statute of 28 U.S.C. § 2255, whereas this case concerns the effect of emergency tolling orders on a state-law statute of limitations applying to civil litigation.  *See* 2022 WL 679483, at 1 (D.D.C. 2022).  Clearly, *King* did not address whether the District of Columbia civil statute of limitations was tolled under the specific Covid-19 Emergency Tolling Order issued by the Chief Judge of the Superior Court and, unlike here, the lawyers for *King* made no attempt to suggest that there was a specific Covid-19 tolling order or other legal authority that provided a basis upon which the Court could extend the deadline for the petition to modify the defendant's criminal sentence.  Rather, in *King*, the defendant merely made vague allegations that the logistical difficulties presented by the pandemic warranted equitable tolling of the deadline to submit his petition to modify his sentence.  *Id.* at 7-10.  After carefully reviewing the circumstances and other caselaw interpreting the specific federal sentencing statute at issue, Judge Bates determined that, in the absence of direct authority that would toll the deadline, the facts in *King* did not warrant equitable tolling of

the one-year federal statutory deadline to file the petition to modify a criminal sentence.  *Id.*

To the extent that the Defendant might argue in its Reply that the Chief Judge's Covid-19 tolling orders should not apply to a case in federal court, this would be inaccurate.  In addition to the holding from *Steorts v. American Airlines*, discussed *supra*,[1] any argument that the Covid-19 tolling orders should not apply in federal court would produce absurd and inefficient outcomes. It would mean that, upon receiving the federal government's discovery production and learning of the potential involvement of the District – despite the District's previous misrepresentations about its jurisdiction over the sidewalk at issue – Ms. Ketten should have somehow pursued separate lawsuits in separate courts, one in U.S. District Court against the federal government and one in D.C. Superior Court against the District of Columbia.  Such an outcome would waste judicial resources and potentially lead to conflicting results in two cases with the same underlying facts.  For the foregoing reasons, Plaintiff requests that the Court deny the Defendant's Motion to Dismiss because her Amended Complaint was timely filed under the Covid-19 Emergency Tolling Orders issued by the Chief Judge of the Superior Court.

B.   The District of Columbia's Motion to Dismiss should be denied because it is equitably estopped from asserting a statute of limitations defense in light of its affirmative representations to Plaintiff that it had no jurisdiction over the sidewalk where she fell.

Assuming *arguendo* that the Court does not find that the Covid-19 tolling orders conclusively extended the Plaintiff's statute of limitations by 377 days, Defendant's Motion to

---

[1] In *Steorts*, the U.S. Circuit Court of Appeals for the District of Columbia determined held that "a limitation on the time of suit is procedural and governed by the law of the forum."  647 F.2d 194, 197 (D.C. Cir. 1981).  The *Steorts* Court further explained that the federal District Court "must adhere to the same limitation period" that would apply in the District of Columbia state-court system.  *Id.*

Dismiss should be denied under the doctrines of equitable estoppel and "lulling." *See Jankovic v. International Crisis Group*, 494 F.3d 1080, 1086 (2007) (noting that, under District of Columbia law, "a defendant who engages in inequitable conduct can be equitably estopped from invoking the statute of limitations"). Here, the Defendant District of Columbia should be estopped from asserting the statute of limitations because it represented to the Plaintiff that it had no jurisdiction over the sidewalk where Plaintiff fell, although there is evidence that suggests the contrary. Not only did the District of Columbia potentially misrepresent the jurisdiction of the area in question, it further instructed the Plaintiff to pursue her claim solely against the federal government, thereby lulling the Plaintiff into not pursuing a claim against the District of Columbia.

Under District of Columbia law, "a defendant cannot assert the bar of the statute of limitations if it appears the defendant has done anything that would tend to lull the plaintiff into inaction and thereby permit the limitation prescribed by the statute to run." *Bailey v. Greenberg*, 516 A.2d 934, 937 (D.C. 1986) (*citing Hornbower v. George Washington University*, 31 App. DC 64 (1908)). For the doctrines of equitable estoppel or lulling to apply, the defendant "must have done something that amounted to an affirmative inducement to plaintiffs to delay the litigation," which is the case here. *Id.*

*Bailey v. Greenberg* illustrates the type of "affirmative inducements" that can operate to estop a defendant from asserting a statute of limitations defense. As a threshold matter, *Bailey* presented a factual scenario similar to the case at bar, because it involved a trip and fall-negligence claim which was subject to the three-year statute of limitations prescribed by D.C. Code § 12-301(a)(8). Moreover, in *Bailey*, the D.C. Court of Appeals determined that the

doctrine of equitable estoppel applied to prevent the defendant from asserting a statute of limitations defense when the defendant-tortfeasor "affirmatively induced" the plaintiff into inaction by providing the injured plaintiff with the incorrect identity of its insurance company. *Id.* at 936.  Specifically, after the plaintiff contacted the defendant about her injury and her intent to bring a claim, the defendant reported to the plaintiff that she should present her claim to the defendant's insurance company, which was identified as "the Insurance Company of North America [INA]."  *Id.*   However, three years and two days after the plaintiff's injury, INA wrote a letter to plaintiff's counsel indicating that it was not the insurance company for the defendant on the day of the injury and therefore would be rejecting the plaintiff's claim.  *Id.*  Based on the facts presented in *Bailey*, the Court of Appeals determined that, despite the lawsuit being filed over three years after the incident, the statute of limitations did not bar the plaintiff's claim because the plaintiff had raised a material issue of fact as to whether, by providing the plaintiff with incorrect information about its insurance company, the defendant affirmatively lulled the plaintiff into not filing suit against the defendant.  *Id.* at 940.

Here, as in *Bailey*, the District of Columbia affirmatively induced the Plaintiff into not filing suit against it by representing to the Plaintiff that the section of the sidewalk where she fell was under the jurisdiction of the federal government – although we now know that there is evidence to the contrary.  Specifically, the District of Columbia made three separate representations to the Plaintiff: (1) that "the District of Columbia was not doing any work in this area"; (2) that "the section of roadway involved is under the jurisdiction of the National Park Service"; and (3) that the Plaintiff should forward her claim "directly" to the attention of the Tort Claims Processing office of the National Park Service.  *See* Exhibit 5, Letter from Janice Stokes,

D.C. Office of Risk Management, March 15, 2019.  These representations conflict with the 1991 memorandum from the D.C. Office of the Surveyor that was produced by the United States during discovery, which established that "District of Columbia jurisdiction prevailed" as to the location in question.  *See* Exhibit 6: Memo from the D.C. Office of the Surveyor, October 2, 1991, DOI 005-006.

Upon receiving the documents from the United States in discovery, undersigned counsel contacted Ms. Stokes to identify what investigation she performed to conclude that the sidewalk near the intersection of Madison Drive NW and 7th Street NW was not under District control but rather "under the jurisdiction of the National Park Service."  *See* Exhibit 7: Email to Janice Stokes.  Notably, to this day, Ms. Stokes has not responded to this inquiry with any proof of her investigation, or with any documentary evidence to rebut the discovery produced by the United States.  In light of the instruction from the District of Columbia government's employee that the Plaintiff should direct her claim against the National Park Service and the District's affirmative representation that it did not have jurisdiction over the location in question – which has turned out to be unlikely – the District should be estopped from asserting a statute of limitations defense in this case.  Therefore, Plaintiff respectfully requests that the District's Motion should be denied.

## III.     CONCLUSION

For the reasons set forth above, the Defendant's Motion to Dismiss should be denied because the statute of limitations did not expire before Plaintiff filed her Amended Complaint on April 21, 2022.

Respectfully submitted,

/s/Daniel S. Singer
Daniel S. Singer, #1011357
Kenneth M. Trombly, #199547
1825 K Street, NW, Suite 1150
Washington, DC 20006
(202) 887-5000
dsinger@tromblylaw.com
kmt@tromblylaw.com
ntrombly@tromblylaw.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was delivered to the Court and all counsel of record this 14th day of June, 2022, via ECF:

/s/Daniel S. Singer
Daniel S. Singer

–14–

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **HEATHER KETTEN** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:21-cv-02437-RMM** |
| | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| *Defendant.* | ) | |
| _____ | ) | |

## PROPOSED ORDER

Upon consideration of the Defendant District of Columbia's Motion to Dismiss, the Plaintiff's Opposition, the Reply thereto, and it appearing that good cause is lacking for the granting of this Motion, it is this _____ day of _____, 2022, hereby,

ORDERED, that the Defendant District of Columbia's Motion to Dismiss be and is hereby DENIED.


_____
Hon. Robin M. Meriweather
United States District Court for the District of Columbia


*Copies to all parties via PACER*

–15–