UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HEATHER KETTEN,

   Plaintiff,

v.

UNITED STATES OF AMERICA, et al.

   Defendants.

Case No. 21-cv-2437-RMM

## MEMORANDUM OPINION AND ORDER

This is a negligence action brought by Heather Ketten ("Ms. Ketten") under the Federal Tort Claims Act and D.C. Code § 12-301(a)(8) against the United States of America and the District of Columbia (together, "Defendants"), respectively. Ms. Ketten seeks joint and several damages from both Defendants for alleged injuries she suffered in November 2018 when she fell while walking on a sidewalk adjacent to the National Mall. Ms. Ketten brought suit against the United States in November 2020. Seven months later, Ms. Ketten amended her Complaint to add the District of Columbia ("The District") as a Defendant. *See* Am. Compl., ECF No. 16. The District thereafter filed a Motion to Dismiss, pursuant to Rule 12(b)(6). *See* ECF No. 21. This motion is ripe for review. Having reviewed the parties' briefs[1] and the relevant law, for the reasons explained below, the Court will treat the District's motion as a Motion for Summary Judgment, pursuant to Rule 56, and finding that the District has not presented a genuine dispute of material fact regarding the application of the lulling doctrine, the Court **DENIES** the District of Columbia's Motion.

---

[1] The opinion is based on the following relevant filings: Def. District of Columbia Mot. to Dismiss, ECF No. 21 ("Mot. to Dismiss"); Pl's Opp. to Mot. to Dismiss, ECF No. 23 ("Pl.'s Opp."); Def.'s Reply in Opp. to Mot. to Dismiss, ECF No. 24 ("Def.'s Reply"); Pl.'s Surreply to

## BACKGROUND

**I.    Factual Background**

Around November 27, 2018, Ms. Ketten, a Texas resident, was walking on the grounds of the National Mall in Washington, D.C.  *See* Am. Compl. ¶ 13.  As Ms. Ketten was approaching the intersection between 7th Street, N.W., and Madison Drive, N.W., she tripped on part of the sidewalk (hereinafter, "sidewalk at issue") and fell to the ground.  *See id.* ¶¶ 13–14.  Ms. Ketten alleges that the sidewalk at issue was crowded with pedestrians, obscuring the "significantly uneven and unmarked discontinuity in the walking surface."  *Id.* ¶ 16.  She further maintains that she acted with reasonable care and assumed no risk, and that the defective sidewalk directly and proximately caused her injuries.  *See id.* ¶¶ 25–26.  As a result of the fall, Ms. Ketten suffered bone fractures in her left foot, which led to more than one surgery and the implementation of hardware in that foot.  *See id.* ¶ 26.  In addition to physical injuries, Ms. Ketten has suffered "severe pain, scarring, suffering, mental anguish, emotional distress, disability, impairment, extreme inconvenience, lost time from daily activities, the need for future treatment and lasting pain and other damages."  *Id.*

Ms. Ketten alleges that Defendants owned, operated, and maintained the sidewalk at issue.  *See id.* ¶ 2, 4.  She further states that Defendants should have known about the defective sidewalk at issue because it "had existed for at least four and a half years before" her fall and because it is located "in one of the most visited tourist sites in the entire country" and receives "heavy pedestrian traffic."  *Id.* ¶ 18–19.  Ms. Ketten seeks two million dollars from Defendants, jointly and severally, and any other relief the Court may find proper and just.  *See generally id.*

---

Mot. to Dismiss, ECF No. 26 ("Pl.'s Surreply").

## II.     Procedural Background

Shortly after the incident, Ms. Ketten alerted the District about her injuries and anticipated civil claim. On January 28, 2019, roughly two months after the fall, Ms. Ketten filed a claim with the District of Columbia Office of Risk Management. *See* Pl.'s Opp., ECF No. 23 at Ex. 4 ("Ms. Ketten's Letter to the District"). In the letter, Ms. Ketten explained the incident and warned that she "will be pursuing a civil claim for damages" against the District of Columbia Government; she also informed the District that it was their "duty to preserve all evidence" related to her claim and the sidewalk at issue. *Id.* at *1.[2] On March 15, 2019, Ms. Janice Stokes sent a letter on behalf of the District of Columbia Office of Risk Management to Ms. Ketten, which said that the District had reviewed her claim and determined that "the District of Columbia is not responsible for [her] stated injuries;" the District therefore denied Ms. Ketten's claim. Pl.'s Opp., Ex. 5 at *1 ("Denial Letter"). In the Denial Letter, Ms. Stokes also represented that the District "was not doing any work in this area and had no prior reports of any problems" and that their "investigation indicates that the section of roadway involved is under the jurisdiction of the National Park Service," ("NPS"). *Id.* She instructed Ms. Ketten to "forward her claim directly to [NPS]" and provided the appropriate address. *Id.* Around November 17, 2020, Ms. Ketten filed a Claim for Injury Standard Form 95 with the United States. *See* Am. Compl. ¶ 5. The United States denied the claim around April 2021. *See id.* ¶ 7.

Ms. Ketten filed the first Complaint in this action on September 16, 2021, naming the United States (but not the District of Columbia) as the Defendant. *See* Compl., ECF No. 1. In Defendant United States' Answer to the Complaint, it admitted that it "was the owner, operator,

---

[2] Throughout, page citations to documents in the record refer to the document's original pagination, unless the page is designated with an asterisk (e.g., *1), in which case the reference is to the pagination assigned by PACER/ECF.

and maintainer of the . . . sidewalk at issue in this case, and maintained possession and control over the area where the injury in this case took place." Answer, ECF No. 7 at ¶ 2; Compl. ¶ 2. In December 2021, the parties filed a joint Meet and Confer statement, which stated, in relevant part, that the parties "do not anticipate that the pleadings will be amended or that additional parties will be joined." Meet & Confer Statement, ECF No. 9 at 3. Although the United States denied "all allegations of negligence, proximate cause, and disputes the extent of injuries claimed by Plaintiff," it did not affirmatively contest its jurisdiction of the sidewalk at issue. *Id.* at 2.

Three months after the Meet and Confer statement was filed, and six months after the initial Complaint was filed, the United States filed an Amended Answer in which it denied the allegation that it was the "owner, operator, and maintainer" of the sidewalk at issue. *See* Am. Answer, ECF No. 12 at ¶ 2; Compl. ¶ 2. The United States provided Ms. Ketten with a copy of a 1991 memorandum that provided evidence that the District of Columbia Public Works assumed responsibility for the sidewalk at issue. *See* Pl.'s Opp, Ex. 6 at *3 ("Oct. 2, 1991 Mem."); *see* Pl.'s Opp., Ex. 7 ("Email to Ms. Stokes regarding Oct. 2, 1991 Mem.").

On April 19, 2022, a few weeks after the United States filed its Amended Answer, Ms. Ketten's attorney sent an email to Ms. Stokes, informing her of the United States' representation that "the District of Columbia indeed has responsibility for maintaining the sidewalk [at issue]." Email to Ms. Stokes regarding Oct. 2, 1991 Mem. The email also noted that they relied on Ms. Stokes's representations regarding the District's claimed lack of responsibility for the sidewalk at issue and may amend the complaint to add the District as a Defendant. *See id.*

Two days later, on April 21, 2022, Ms. Ketten amended her complaint to add the District as a Defendant. *See* Am. Compl. The United States filed an Answer, in which it restated its

4

position that it did not have control over the sidewalk.  *See* Answer, ECF No. 20 at ¶ 2.  The District then moved to dismiss the Amended Complaint.  *See* Mot. to Dismiss.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint if the plaintiff fails to "state a claim upon which relief may be granted."  In her complaint, the plaintiff must allege facts sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2).  The moving party bears the burden of demonstrating that the plaintiff's complaint is legally insufficient.  *Id.*  In this context, the court must "accept as true all of the allegations" in the complaint and must construe those allegations "liberally in plaintiff's favor."  *Redding v. D.C.*, 828 F. Supp. 2d 272, 277–278 (D.D.C. 2011) (quoting *Kowal v. MCI Comm's Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  This means that the court should draw "all inferences that can be derived from the facts alleged" in the light most favorable to the plaintiff.  *Kowal*, 16 F.3d at 1276.  Statements in the complaint which are "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp.*, 550 U.S. at 545).  Instead, they must be set aside, and the court must determine whether the remaining factual allegations in the complaint "allow[] the court to draw the reasonable inference that the defendant is liable."  *Id.*

Because only limited documentary evidence and exhibits beyond the pleadings may be considered when reviewing a Rule 12(b)(6) motion, a motion to dismiss that relies on such materials generally "must be treated as one for summary judgment."  Fed. R. Civ. P. 12(d).  When a 12(b)(6) motion raises a statute of limitations defense, and the "parties submit material outside the pleadings and . . . are not taken by surprise or deprived of a reasonable opportunity to

contest facts averred outside the pleadings . . . the court may convert the motion to a motion for summary judgment without providing notice or the opportunity for discovery to the parties." *Highland Renovation Corp. v. Hanover Ins. Gp.*, 620 F. Supp. 2d 79, 82 (D.D.C. 2009) (cleaned up) (citing *Tunica-Biloxi Tribe of La. v. United States*, 577 F. Supp. 2d 382, 405 (D.D.C. 2008)); *see also Russell v. Harman Int'l Indus., Inc.*, 945 F. Supp. 2d 68, 72 (D.D.C. 2013), aff'd, 773 F.3d 253 (D.C. Cir. 2014) (converting motion to dismiss to motion for summary judgment, *sua sponte*, when defendants relied on materials outside the pleadings in arguing that plaintiff's claim was barred by a waiver agreement); *Faison v. Vance-Cooks*, 896 F. Supp. 2d 37, 47 n.7 (D.D.C. 2012) ("Because here, the parties refer to materials outside the pleadings, including declarations, medical reports, and the parties' correspondence, to determine the deadline by which [the plaintiff] should have raised her administrative complaints with the [administrative agency], the [the defendant's] motion to dismiss [the plaintiff's] claims shall be converted in a motion for summary judgment."). Courts have discretion to decide whether to convert a motion to dismiss into a motion for summary judgment. *See Jones v. Lattimer*, 29 F. Supp. 3d 5, 16 n.6 (D.D.C. 2014) (noting that courts may convert a motion but declining to do so because "further factual development [was] not necessary" and the court did not need to consider matters outside the pleadings in coming to its decision); *Brown v. Gov't of D.C.*, 390 F. Supp. 3d 114, 125 (D.D.C. 2019) (declining to decide issues better reserved for later stages of litigation at the motion to dismiss stage).

In deciding a 12(b)(6) motion without converting it to a summary judgment motion, courts may rely on, in addition to the complaint, any documents attached as exhibits or incorporated by reference in the complaint, documents upon which the plaintiff's complaint necessarily relies, facts of which the court may take judicial notice, and matters of public record.

*Brown*, 390 F. Supp. 3d at 122; *Flynn v. Tiede-Zoeller, Inc.*, 412 F. Supp. 2d 46, 50 (D.D.C. 2006); *Ashbourne v. Hansberry*, 245 F. Supp. 3d 99, 103 (D.D.C. 2017), aff'd, 894 F.3d 298 (D.C. Cir. 2018); *Sierra v. Hayden*, 254 F. Supp. 3d 230, 237 (D.D.C. 2017). "[M]erely mentioning" or "alluding to" a document in one's complaint "does not make [the document] an 'integral' part of the pleading." *Horton v. Espindola*, 319 F. Supp. 3d 395, 401 (D.D.C. 2018) (converting motion to dismiss into motion for summary judgment where plaintiff relied on documents explicitly referenced in the complaint in the motion briefing but such documents were not attached as exhibits to the complaint or discussed beyond a mere reference in the complaint). However, consideration of administrative complaints and administrative orders filed by the plaintiff on the same claim to determine whether the plaintiff exhausted her administrative remedies, is always appropriate at the motion to dismiss stage. *Sierra*, 254 F. Supp. 3d at 237 ("In the context of exhaustion, courts are willing to rely upon administrative orders and administrative complaints without converting the motion into one for summary judgment when the documents are referred to in the complaint, . . . are integral to [the plaintiff's] exhaustion of administrative remedies, and are public records subject to judicial notice.").

Summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When reviewing a motion for summary judgment, a court "must view the evidence in the light most favorable to the nonmoving party and . . . draw all reasonable inferences in favor

of the nonmoving party," *Grosdidier v. Broad. Bd. of Governors, Chairman*, 709 F.3d 19, 23–24 (D.C. Cir. 2013) (citation omitted), and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law," *Anderson*, 477 U.S. at 251–52.  The court must also "eschew making credibility determinations or weighing the evidence." *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007).

## DISCUSSION

The District argues that Ms. Ketten's Amended Complaint should be dismissed because it was not timely filed.  There is no specific statute that prescribes the limitations period for negligence actions arising under the D.C. Code, the cause of action on which Ms. Ketten's complaint against the District is based.  *See* Am. Compl.  Actions for which a limitations period is not provided are subject to a three-year statute of limitations.  D.C. Code § 12-301; D.C. Code § 12-301(a)(8).  It is undisputed that Ms. Ketten filed her amended complaint raising claims against the District of Columbia on April 21, 2022, more than three years after the injury occurred.  *See* Am. Compl. ¶ 13.  The parties' dispute centers on whether that delay bars her claims, whether equitable principles such as tolling, estoppel, and waiver extend the filing deadline or preclude the District from invoking the statute of limitations as an affirmative defense,[3] and whether a Superior Court Order extended the filing deadline.

The District offers three arguments in support of dismissal: First, that the claim is barred by the applicable three-year statute of limitations.  *See* Mot. to Dismiss at 3.  Second, that the

---

[3] "[A] statute of limitations is an affirmative defense." *Stewart v. Int'l Union, Sec., Police & Fire Pros. of Am.*, 271 F. Supp. 3d 276, 280 (D.D.C. 2017); Fed. R. Civ. P 8(c).  The defense may "be raised in a pre-answer motion under Rule 12(b)" if "the facts that give rise to the defense are clear from the face of the complaint." *Id.* (quoting *Smith-Haynie v. D.C.*, 155 F.3d 575, 578 (D.C. Cir. 1988)).

Amended Complaint does not relate back to the date of the timely filed original pleading. *See id.* at 3–5. Third, that the balance of equities does not support tolling the statute of limitations. *See id.* at 5–6. Ms. Ketten counters that the statute of limitations was tolled pursuant to a D.C. Superior Court Order that extended several statutory filing deadlines during the Covid-19 pandemic, and that the District cannot raise a statute of limitations defense because it affirmatively induced her to delay bringing suit against it by misrepresenting its ownership and control over the sidewalk where she fell. *See* Pl.'s Opp. at 1–2.

As a threshold matter, the Court must determine whether to review the motion under Rule 12(b)(6) or convert it to a motion for summary judgment. Ms. Ketten relies on several exhibits outside of the pleadings in her opposition to the motion to dismiss, such as correspondence between her attorney and representatives of the District. Those exhibits were not referenced or attached as exhibits in her Amended Complaint. Therefore, the Court will convert the motion to dismiss to a motion for summary judgment, because its analysis of the District's arguments for dismissal will rely on documents outside the pleadings. *See Highland Renovation Corp.*, 620 F. Supp. 2d at 82.

## I. D.C. Law Governs the Court's Review of the District's Statute of Limitations Defense.

The parties do not agree on the appropriate standard for reviewing the District's statute of limitation defense. Ms. Ketten cites to state law regarding tolling limitations periods; the District points to federal law. *See* Mot. to Dismiss at 5–6; Pl.'s Opp. at 11. "[S]tate law governs the issue of whether a limitations period should be tolled." *Loumiet v. United States*, 968 F. Supp. 2d 142, 152 (D.D.C. 2013), *on reconsideration in part*, 65 F. Supp. 3d 19 (D.D.C. 2014); *see also Williams v. D.C.*, 916 F. Supp. 1, 5 (D.D.C. 1996) (noting that when "construing D.C. law, federal courts cannot apply the doctrine of equitable tolling differently than would the

District of Columbia courts"). Accordingly, the Court will apply D.C. law to resolve this motion.

     A.    **The Lulling Doctrine Bars the District from Asserting a Statute of Limitations Defense.**

The District of Columbia strictly applies its statutes of limitations and does not apply equitable tolling as broadly as many other jurisdictions. *East v. Graphic Arts Indus. Joint Pension Tr.*, 718 A.2d 153, 156 (D.C. 1998). However, the "lulling doctrine" is one exception to its otherwise firm adherence of statutory filing deadlines. *See id.* The lulling doctrine does not truly "toll" the statute of limitations, but instead may bar a defendant from asserting a statute of limitations defense in certain circumstances. *See Doe v. Exxon Mobil Corp.*, No. 1:01-CV-1357, 2022 WL 3043219, at *11 (D.D.C. Aug. 2, 2022).

The doctrine applies if a defendant "has done anything that would tend to lull the plaintiff into inaction, and thereby permit the limitation prescribed by the statute to run." *Graphic Arts*, 718 A.2d at 156–57 (quoting *Bond v. Serano*, 566 A.2d 47, 50 (D.C. 1989)). A defendant must have engaged in "affirmative acts . . . to fraudulently conceal either the existence of a claim or facts forming the basis of a cause of action." *Drake v. McNair*, 993 A.2d 607, 619 (D.C. 2010). "[M]ere silence, failure to disclose, or ignorance of facts establishing a claim generally do not rise to the level of affirmative misconduct." *Graphic Arts*, 718 A.2d at 157 (internal quotations omitted). Relatedly, a defendant's "failure to call the plaintiff's attention" to something does not suffice. *Martinez v. Hartford Cas. Ins. Co.*, 429 F. Supp. 2d 52, 57 (D.D.C. 2006). Courts in this district have applied the lulling doctrine against the District of Columbia as well as private defendants. *See, e.g.*, *Pappas v. D.C.*, 513 F. Supp. 3d 64, 86 (D.D.C. 2021); *Smith-Thompson v. D.C.*, 657 F. Supp. 2d 123, 133 (D.D.C. 2009); *Allen v. D.C.*, No. 00-CV-591, 2021 WL 6065785, at *3 (D.D.C. Dec. 22, 2021), *aff'd*, No. 21-7142, 2022 WL 1278925 (D.C. Cir. Apr. 28, 2022).

Courts also weigh the sophistication of the plaintiff and power dynamic between the parties when deciding whether the lulling doctrine applies. *See Vigilant Ins. Co. v. Am. Mech. Servs. of Maryland, L.L.C.*, 816 F. Supp. 2d 114, 120 (D.D.C. 2011) (holding that no reasonable jury could find that plaintiff "insurance company that well knows how limitations in agreements operate" was lulled by defendant's "inactivity"). In addition, "[i]f ample time to file suit within the statutory period exists after the circumstances inducing delay have ceased, there is no estoppel against pleading the bar of the statute." *Tiger Steel Eng'g, LLC v. Symbion Power, LLC*, 195 A.3d 793, 802 (D.C. 2018) (internal quotations and citations omitted) (finding no lulling when, after two years of discussions with the defendant, plaintiff "knew or reasonably should have known" that the defendant was not going to pay the full debt amount with one year remaining in the statute of limitations period).

Ms. Ketten argues that her detrimental reliance on the District's misrepresentation about its jurisdiction of the sidewalk at issue should preclude the District from claiming a statute of limitations defense. *See* Pl.'s Opp. at 10–13. Ms. Ketten cites cases where courts estopped defendants from raising statute of limitations defenses if they "engage[d] in inequitable conduct," *Jankovic v. Int'l Crisis Group*, 494 F.3d 1080, 1086 (D.C. 2007), or "d[id] anything that would tend to lull the plaintiff into inaction and thereby permit the limitation prescribed by the statute to run," *Bailey v. Greenberg*, 516 A.2d 934, 937 (D.C. 1986). The District denies that it "lulled" Ms. Ketten into delaying her lawsuit against it, distinguishing the present facts from *Bailey*. It claims that it "merely offered [Ms. Ketten] information about the identity of the entity she concedes owns the site of the fall." Def.'s Reply at 4–5.[4]

---

[4] The District further argues that Ms. Ketten cannot avail herself of equitable tolling because she has not established two elements required for equitable tolling: "(1) that [Ms. Ketten] has been pursuing h[er] rights diligently, and (2) that some extraordinary circumstance

11

The Court first considers whether there was an affirmative act by the District that caused lulling. The District affirmatively communicated to Ms. Ketten, in response to her claim request, not only that it did not have "any liability" and was not "doing any work" on the sidewalk at issue, but that the sidewalk was "under the jurisdiction of the National Park Service." Denial Letter at *1. Volunteering the information about both the District and NPS was an affirmative act that "concealed the existence of a claim" against the District, because the act represented to Ms. Ketten that she had no claim against the District, the "incorrect" party. *See id.*; *Drake*, 993 A.2d at 619.

Next, the Court analyzes the power dynamic of the plaintiff and sophistication of the parties. Here, the parties' relative sophistication and nature is informative. Ms. Ketten is an individual who resides in Texas; at the time of her injury, she was a visitor in D.C. *See* Am. Compl. ¶¶ 1, 13. The knowledge gap between a tourist visiting D.C. and the D.C. government about proper jurisdiction over a piece of sidewalk in D.C. is significant. The District is accordingly in a much better position to ascertain who controlled or was responsible for the sidewalk at issue. In *Vigiliant Insurance*, the court found that plaintiff's corporate status as an insurance company precluded it from being lulled by the defendant's inaction because it "well

---

stood in h[er] way." Mot. to Dismiss at 5–6 (citing *Young v. SEC*, 956 F.3d 650, 655 (D.C. Cir. 2020)). First, the District says Ms. Ketten failed to exercise reasonable diligence namely because she did not file the initial lawsuit against both government defendants, did not undertake investigatory measures after receiving D.C.'s denial letter, and waited several months before submitting an injury claim against the United States. *See* Mot. to Dismiss at 6; Def.'s Reply at 4. The District also posits that "no extraordinary circumstances caused Plaintiff's untimeliness." Mot. to Dismiss at 6.

For reasons previously stated, general principles of equitable tolling—on which the District in making such arguments appears to rely—do not apply under the applicable D.C. law. *Graphic Arts*, 718 A.2d at 156 (D.C. 1998) (declining to apply broad equitable tolling). Thus the Court does not find these arguments persuasive or relevant in considering whether the District engaged in "lulling."

knows how limitations in agreements operate." 816 F. Supp. 2d at 120. Here, Ms. Ketten—a Texas resident—does not "well know[]" how the jurisdiction over sidewalks is assigned in D.C. *Id.* Ms. Ketten's relationship with D.C. is more akin to "a naïve insured manipulated by h[er] insurer"—a scenario in which the *Vigilant* court suggested "lulling" could be found. *Id.*

The District's argument that Ms. Ketten should have undertaken independent research or filed FOIA requests in response to "[t]he District's non-definitive statement" about its investigation is not persuasive. Def.'s Reply at 4. Ms. Ketten should not have assumed the District's investigation was rushed, tentative, or incorrect, as there is nothing that suggests as much in its March 2019 letter, particularly in light of the two and half months it took for them to respond. *See* Denial Letter at *1.

Finally, in addition to the character of the alleged "lulling" conduct, courts have also considered *when* the "lulling" activity occurred to assess whether the plaintiff could have filed her lawsuit within the bounds of the limitations period after the lulling activity ceased. Here, as noted above, the District's conduct was not temporary or tentative—its representation appeared to be a final decision, after allegedly conducting an investigation, that was not subject to change. *See id.* The District and Ms. Ketten had no further substantive correspondence between March 15, 2019—the date of the District's Denial Letter to Ms. Ketten—and April 19, 2022—the date Ms. Ketten re-engaged the District following the United States' representation that it did not have jurisdiction over the sidewalk at issue. So, unlike the ongoing correspondence between the plaintiff and defendant in *Tiger Steel*, where the plaintiff attempted to grasp at various statements that they argued showed the defendant continued to "lull" plaintiff into inaction, here, there are no facts that suggest the District said or did *anything* to Ms. Ketten after March 15, 2019, let alone anything that would undermine or contradict its initial position stated in its letter that NPS,

not it, was responsible for the sidewalk at issue.  195 A.3d at 802.

The United States' actions in this litigation did nothing to undermine the District's position.  In the United States' Answer to Ms. Ketten's first complaint, it admitted it was "the owner, operator, and maintainer of the . . . sidewalk at issue."  *See* Compl. ¶ 2; Answer ¶ 2.  This affirmation would give Ms. Ketten no reason to doubt the representation in the District's denial letter in March 2019.  It was not until March 25, 2022—over two years later—that the United States amended its Answer and claimed it was not responsible for the sidewalk.  *See* Am. Answer ¶ 2.  Only then was Ms. Ketten on notice that the District may be liable notwithstanding the District's prior denial of ownership or control of the sidewalk.  Ms. Ketten promptly filed her Amended Complaint against the District following the United States' representation and after first consulting with the District.  *See* Am. Compl. (filed on April 22, 2022); Email to Ms. Stokes regarding Oct. 2, 1991 Mem. (sent on April 19, 2022).

The Court therefore concludes that there is no genuine dispute of material fact regarding the issue of lulling, and that Ms. Ketten has proven as a matter of law that the District engaged in "lulling" activity and is therefore precluded from raising a statute of limitations defense in this action.  That conclusion makes it unnecessary to reach the parties' other arguments regarding the effect of the Superior Court's Covid-19 order, the relation-back doctrine, or broader principles of equitable tolling.  Accordingly, the Court deems Ms. Ketten's Amended Complaint timely filed.

## CONCLUSION AND ORDER

For the foregoing reasons, it is hereby ORDERED that the District of Columbia's Motion to Dismiss, ECF No. 21, which the Court has converted to a motion for summary judgment is DENIED.  It is further ORDERED that by no later than 30 days from the date of this Order, the Parties shall submit a joint status report discussing whether a referral to a different magistrate

judge or the District Court mediation program for mediation would be beneficial in light of this decision or, alternatively, whether the parties wish to set a scheduling order, and if so, they should offer proposed deadlines for discovery.

Dated: May 1, 2024

_____
ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE
